**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **JOHN McKENZIE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-1026** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

John McKenzie ("Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of a final

decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying

his application for disability insurance benefits ("DIB") under Title II of the Social Security Act.

Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 18) and Defendant's

Motion for Summary Judgment (ECF No. 20).[1]  Plaintiff contends that the administrative record

does not contain substantial evidence to support the Commissioner's decision that he is not

disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Defendant's Motion

for Summary Judgment (ECF No. 20) is **GRANTED**, Plaintiff's Motion for Summary Judgment

(ECF No. 18) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable."  *Id.*

# I

# Background

Plaintiff was born in 1961, has a high-school education, and previously worked as an electrician.  R. at 26-27.  Plaintiff applied for DIB on October 19, 2009, alleging disability beginning on July 1, 2005 (later amended to October 19, 2009), due to "left arm, shoulder problems, neck injury."  R. at 11, 128-31, 139-40, 145.  The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 83-88, 92-96.  On September 12, 2011, ALJ Larry Banks held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 22-48.  On November 22, 2011, the ALJ issued a decision finding Plaintiff not disabled from the amended alleged onset date of disability of October 19, 2009, through the date last insured ("DLI") of December 31, 2010.  R. at 8-21.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 4, 2013.  R. at 1-3, 7.  The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 6, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

### A.    Bruce Neckritz, D.O.

On April 16, 2010, Dr. Neckritz conducted a consultative musculoskeletal examination of

Plaintiff, noting his complaints of "left arm problems, shoulder problems and a neck injury."  R.

at 314.  Dr. Neckritz further noted:

> [Plaintiff] had worked for most of his life as an Electrician, almost twenty
> five years. . . . At the end of 2003 he suffered an injury while at work.  There was
> a ladder against a house approximately 30 feet extended.  A gust of wind caught
> the ladder and blew it backwards.  He tried to stabilize the ladder to prevent it
> from crashing into a window.  As a result of this his left arm was severely injured
> at the shoulder. . . .
>
> . . . .
>
> He had to stop working on July 3, 2005 as the pain was becoming too
> severe.  Thus it has been five years since he has been out of work.
>
> . . . .
>
> [Plaintiff] describes pain on a daily basis, level seven to eight out of ten.
> He actually has two types of pain that he experiences.  The first type is where his
> left arm actually feels that it is burning and his hand is on fire.  The second type
> of pain begins in the posterior scapula region and comes through his chest area
> almost feeling like a knife going through his back.  If he tries to extend his neck,
> looking up . . . will set off the scapula pain.  Recently he has been experiencing
> burning sensation in the left four and fifth fingers and also occasional numbness
> in the left thumb.
>
> He normally is left hand dominant but with his left arm problems he has
> now begun to use his right hand for more functional activities.

R. at 314-15.  "He is able to perform his own activities of daily living but uses his right arm more

frequently now due to the left upper extremity discomfort.  He has developed a tremor in his left

arm additionally."  R. at 315.  "Strength and sensation are normal in the right upper and lower

bilateral extremities."  R. at 315.  "The left upper extremity is limited secondary to pain.  He has

a significant restriction in internal rotation at the left shoulder.  Flexion and abduction are also limited at the left shoulder." R. at 316.  Dr. Neckritz noted "no muscle atrophy in the left upper extremity" and that Plaintiff's "[l]eft elbow and hand range of motion are normal." R. at 316.

Dr. Neckritz opined that Plaintiff's "ongoing pain and chronic pain problems make it difficult to work in a competitive environment." R. at 316.  "He has taken himself off of narcotic medicines as they were no longer effective for him.  He has been through different pain medications but nothing seems to give him any long lasting relief." R. at 316.

**B.      State Agency Medical Consultants**

On May 14, 2010, W. Hakkarinen, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 318-25.  Dr. Hakkarinen opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 319.  He could never climb ladders, ropes, or scaffolds, but he could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  R. at 320.  Plaintiff's manipulative limitations with his left upper extremity included limited reaching in all directions, handling, and fingering because of his previous injuries with continued decreased range of motion and grip strength.  R. at 321.  Plaintiff had no visual, communicative, or environmental limitations, however.  R. at 321-22.

On August 12, 2010, another state agency medical consultant, M. Feld, M.D., also assessed Plaintiff's physical RFC.  R. at 340-47.  Dr. Feld expressed the same opinion regarding Plaintiff's exertional limitations, but opined that Plaintiff did not have any postural, manipulative, visual, communicative, or environmental limitations because of Plaintiff's ability to do yard work and cut grass.  R. at 341-45.

### C.    Hearing Testimony

#### 1.    Plaintiff's Testimony

In his decision, the ALJ reviewed Plaintiff's testimony as follows:

> [Plaintiff] testified to having a long history of cervical spine and shoulder
> problems.  He mentioned having a discectomy and fusion on his cervical spine in
> 1996 but returned to work shortly thereafter.  Then in 2003, he suffered a work-
> related injury where an extension ladder collapsed causing him to hurt his left
> shoulder and re-injure his neck.  [Plaintiff] underwent a repair of his torn left
> rotator cuff on March 3, 2004 and was able to continue working at a lighter than
> normal capacity until 2005.  He ended his 25-year career as an electrician as he
> testified that the pain became too much for him in 2005.  On December 10, 2008,
> [Plaintiff] underwent an arthroscopic repair of his left shoulder and attended
> physical therapy until August 2009 in order to strengthen his shoulder.

R. at 15 (citation omitted).

> In terms of [Plaintiff's] alleged chronic pain, [Plaintiff] testified that he no longer
> takes prescription pain medications and that he stopped prior to losing his
> workers' compensation benefits.  He further explained that he took over-the-
> counter medication sparingly because they tended to upset his stomach.  Also, he
> stated he still did household chores like mowing his grass, working in the garden,
> laundry, and light cleaning.  Moreover, while he explained that he had a friend
> drive him to the hearing because it was in the city and he did not like driving with
> his neck problems, in a lot of traffic, he did state that he still drove around his
> home on a consistent basis.

R. at 16 (citation omitted); *see* R. at 26-43.  At the hearing, Plaintiff demonstrated a tremor with

his left, dominant hand that, according to him, shakes "[p]retty much all the time."  R. at 32-33.

He further testified that he could not feel with his left hand.  R. at 37.

#### 2.    VE Testimony

The VE classified Plaintiff's past work as skilled and medium.[2]  A hypothetical person

with Plaintiff's same age, education, and work experience who could perform at most light work[3]

could not perform Plaintiff's past work if, according to the ALJ, that person

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

should do no climbing of ropes, ladders or scaffolds, can perform stooping but only on an occasional basis, should also avoid work around dangerous machinery or unprotected heights.  Should also avoid above shoulder lifting or constant reaching, you know, with the left dominant upper extremity.  Should also avoid constant fine and gross manipulation with the left upper extremity.  I'm also going to include minor difficulties in concentration, persistence and pace due to possible side effects of any meds and also due to bouts of pain which would limit the person to performing only unskilled tasks.

R. at 44-45.  Such an individual could perform light, unskilled jobs such as a routing clerk or general office helper, however.  R. at 45.  A limitation with reaching with the left upper extremity "would not preclude one's ability to successfully perform."  R. at 45-46.  A reduction of productivity of 15% or greater due to "someone's complaints of pain, missing time, reaction, unscheduled breaks" would not constitute substantial gainful activity.  R. at 46.

The Court reviews other portions of the record more fully in its discussion of Plaintiff's arguments below.  *See infra* Part VI.

### III

### Summary of ALJ's Decision

On November 22, 2011, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of October 19, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*

perform other work in the national economy, such as a routing clerk or general office helper.  R.

at 13-18.  The ALJ accordingly found that he was not disabled from October 19, 2009, through

the DLI of December 31, 2010.  R. at 18.[4]

> In so finding, the ALJ found that, through the DLI, Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) except no climbing of ropes, ladders or scaffolds; perform stooping on an occasional basis; avoid work around dangerous machinery or unprotected heights; avoid above the shoulder lifting or constant reaching with the left dominant upper extremity; avoid constant fine and gross manipulation with the left upper extremity; and having moderate difficulties in concentration, persistence or pace due to pain and possible side-effects of medication resulting in being limited to performing unskilled tasks.

R. at 14.  Regarding Plaintiff's credibility, the ALJ found that his "medically determinable

impairments could reasonably be expected to cause the alleged symptoms; however, [his]

statements concerning the intensity, persistence and limiting effects of these symptoms are not

credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  R. at 15.

The ALJ also considered the opinion evidence, declining to adopt Dr. Neckritz's opinion

after considering the entire record as a whole.  R. at 16.  The ALJ noted:

> Dr. Neckritz only saw [Plaintiff] at this one instance and seemed to reiterate mainly [Plaintiff's] subjective complaints.  He did not take into account that [Plaintiff] was not taking prescription pain medication and failed to explain or quantify how the pain would limit his ability to work.  Also, the undersigned notes that this is an opinion on an issue reserved to the Commissioner.  For these reasons, Dr. Neckritz's opinion regarding disability is given little weight.

R. at 16 (citations omitted).  As discussed more fully below, the ALJ further considered the state

agency medical consultants' opinions, finding that they "also support a finding of 'not disabled'"

and noting that "[f]indings of fact made by a State agency medical professional regarding the

---

[4] Although recognizing throughout the rest of the ALJ's decision Plaintiff's amended alleged onset date of disability of October 19, 2009, the ALJ erroneously states on page 18 of the administrative transcript the alleged onset date of disability as July 1, 2005.  R. at 18.

nature and severity of an individual's impairments must be treated as expert opinion evidence by a non-examining source." R. at 16, 17.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.   *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**V**

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff maintains that the ALJ erroneously assessed his RFC.  Pl.'s Mem. Supp. Mot. Summ. J. 4-9, ECF No. 18-1.  He further contends that the ALJ failed to develop properly the administrative record.  *Id.* at 10-12.

## A.     ALJ's RFC Assessment

Plaintiff first contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[6] ("SSR") 96-8p.  Pl.'s Mem. Supp. Summ. J. 4-6, ECF No. 18-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  In particular, he maintains that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence."  *Id.* at 7.  First, Plaintiff maintains that the ALJ erred in relying on the state agency medical consultants' opinions, which he mischaracterized.  *Id.* at 7-8.  Second, he asserts that the ALJ failed to explain his RFC assessment.  *Id.* at 8.  Third, according to Plaintiff, the ALJ erroneously disregarded the opinion of Dr. Neckritz, the consultative examiner who examined Plaintiff on April 16, 2010 (R. at 16, 312-17).  *Id.* at 8-9.  Fourth, Plaintiff contends that the ALJ failed to address his tremor in his left upper extremity or his lack of feeling in his left hand that was mentioned at the hearing.  *Id.* at 9.  Thus, according to Plaintiff, the ALJ's RFC assessment "fails to be supported by

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

substantial evidence" and "defies review." *Id.* As discussed further below, Plaintiff's arguments are unavailing.

"In making an RFC finding, the ALJ is under an obligation to 'include a narrative discussion describing how the evidence supports each conclusion, *citing specific medical facts and non-medical evidence.*'" *Lehman v. Astrue*, 931 F. Supp. 2d 682, 695 (D. Md. 2013) (alteration in original) (quoting SSR 96-8p). "While the precise medical evidence relied on for every specific limitation need not be discussed directly in the actual RFC finding, the Court must not be required to speculate as to the bases for the findings." *Vandervort v. Astrue*, Civil Action No. TMD 10-02671, 2013 WL 508987, at *2 (D. Md. Feb. 11, 2013).

Plaintiff maintains that substantial evidence does not support the ALJ's RFC assessment because the ALJ mischaracterized the state agency medical consultants' opinions. The ALJ stated in his decision that Dr. Hakkarinen

> determined that from an exertional standpoint, [Plaintiff] is able to lift twenty pounds occasionally and ten pounds frequently, stand and walk for a total of six hours, and sit for about six hours in an eight hour day. The doctor further noted that [Plaintiff's] ability to push and pull is unrestricted. *With regard to postural limitations, Dr. Hakkarinen found that [Plaintiff] could frequently balance and stoop and could occasionally climb, kneel, crouch, and crawl but never climb ladders, ropes or scaffolds. Furthermore, the State agency consultant found no manipulative, visual, communicative or environmental limitations. Dr. Hakkarinen's opinion was subsequently affirmed as written by State agency consultant[] M. Feld, MD.* The undersigned concurs with the State agency medical consultants' opinions that [Plaintiff] is not disabled.

R. at 16-17 (emphasis added) (citations omitted). As Plaintiff points out, Dr. Hakkarinen actually opined that Plaintiff could never climb ladders, ropes, or scaffolds, but he could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. R. at 320. Dr. Hakkarinen also in fact found that Plaintiff's manipulative limitations included limited reaching, handling, and fingering. R. at 321. Furthermore, Dr. Feld did not affirm Dr. Hakkarinen's

opinion, but, in finding that Plaintiff had no postural or manipulative limitations, proffered a less restrictive assessment than those given by either Dr. Hakkarinen or the ALJ.  R. at 342-43.

The burden is on the party attacking an agency's determination to show that prejudice resulted from the error.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964))).  In assessing Plaintiff's RFC, the ALJ found that he was capable of performing light work with certain limitations.  His postural limitations limited him to occasional stooping and to no climbing of ropes, ladders, or scaffolds.  R at 14.  Plaintiff's manipulative limitations were to avoid lifting above the shoulder and constant reaching and fine and gross manipulation with the left upper extremity.  R. at 14.  Plaintiff's environmental limitation was avoiding dangerous machinery and unprotected heights.  R. at 14.  The ALJ also found that Plaintiff experienced moderate difficulties in concentration, persistence, or pace that limited him to unskilled work.  R. at 14.  The ALJ posed these limitations at the hearing to the VE, who testified that they did not preclude someone of Plaintiff's age, education, and work experience from performing light, unskilled work such as a routing clerk or general officer helper.  R. at 44-45.

The ALJ's error is, therefore, harmless.  "[A] deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."  *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see*

*Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Because Plaintiff does not demonstrate prejudice as a result of the ALJ's error, Plaintiff's contention is without merit.

Plaintiff further asserts that the ALJ erred in not addressing Dr. Hakkarinen's opinion regarding Plaintiff's capacity to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs frequently. Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 18-1. According to Defendant, however, "the other postural limitations generally do not impact light work," and "the specific occupations relevant to this case do not require an individual to engage in those other postural activities." Def.'s Mem. Supp. Mot. Summ. J. 11, ECF No. 20-1. As the Commissioner points out, *id.* at 12-13, the jobs of router and general office helper do not require stair climbing, balancing, kneeling, crawling, or crouching, according to the *Dictionary of Occupational Titles*.[7] Further, the ALJ's assessment of only occasional stooping by Plaintiff does not preclude performing the jobs identified by the VE. Thus, even if the ALJ had included in his RFC assessment the postural limitations as opined by Dr. Hakkarinen, "there is no indication that the ALJ would have reached a different conclusion regarding the availability of jobs in the national and regional economies." *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D.W. Va. 2009); *see Coles v. Astrue*, Civil No. JKS 08-321, 2009 WL 3380334, at *3 (D. Md. Oct. 16, 2009)

---

[7] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

("[E]ven if the ALJ had adopted [the state agency consultant's] non-exertional limitations, [the claimant] would still be capable of light work and the RFC would be unchanged. *See* Soc. Sec. Ruling 83-14 at *4-5 (certain non-exertional limitations, including but not limited to the 'inability to ascend or descend scaffolding, poles, and ropes' do not significantly affect the ability to perform work)."); SSR 85-15, 1985 WL 56857, at *6-7 ("Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. . . . If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. . . . [L]imitations on the ability to crawl would be of little significance in the broad world of work.  This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees)."); SSR 83-14, 1983 WL 31254, at *2 ("Relatively few jobs in the national economy require ascending or descending ladders and scaffolding. . . . [T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job).").  Accordingly, Plaintiff again fails to demonstrate prejudice from the ALJ's claimed error.

Plaintiff also contends that the ALJ erred in determining his manipulative limitations and in failing to explain how these limitations were not more restricted.  Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 18-1.  As noted above, Dr. Hakkarinen's opinion regarding Plaintiff's limited overhead reaching, fingering, and handling (R. at 321) was expressed by the ALJ in his RFC assessment and in his hypothetical questions to the VE at the hearing (R. at 44-45) as a limitation in avoiding above-shoulder lifting and constant reaching and fine and gross

manipulation with the left upper extremity.  R. at 14, 44-45.  Again, Plaintiff fails to demonstrate prejudice from the ALJ's error in restating Dr. Hakkarinen's opinion in his decision.

Plaintiff's contention that the ALJ "failed to identify the evidence upon which he relied to support [his RFC] determination" regarding Plaintiff's manipulative limitations (Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 18-1) also is without merit, as the ALJ noted in the decision Plaintiff's treatment notes regarding his shoulder and neck pain (R. at 15-16, 326-29, 331, 336-37).  After reviewing the record, the Court concurs with the Commissioner that substantial evidence "supports the ALJ's finding that [Plaintiff] had some limitation in his ability to reach and manipulate, but does not necessitate a finding of greater limitation."  Def.'s Mem. Supp. Mot. Summ. J. 15, ECF No. 20-1.

Plaintiff next maintains that the ALJ failed to address either his tremor in his left upper extremity or his lack of feeling in his left hand.  Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 18-1 (citing R. at 32, 27).  Plaintiff again fails to demonstrate prejudice from the claimed error.

> While the Commissioner's decision must contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]

*Reid v. Comm'r of Soc. Sec.*, No. 13-1480, 2014 WL 2958800, at *3 (4th Cir. July 2, 2014) (citation omitted) (internal quotation marks omitted).  In any event, Plaintiff's treatment notes and activities of daily living belie functional limitations beyond those already considered by the ALJ.  R. at 42-43 (yard work), 326 (noting "some chronic low-grade numbness in his left hand, but no other significant fixed neurologic deficits"), 327 (although Plaintiff complained of "some problems with dexterity," examination revealed that hand dexterity was "well maintained").  "If it is predictable with great confidence that the agency will reinstate its decision on remand

because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.); *see Bautista v. Astrue*, Civil No. TJS-11-1651, 2013 WL 664999, at *6 (D. Md. Feb. 22, 2013).

Plaintiff also asserts that the ALJ erred in disregarding the opinion of Dr. Neckritz as being based on a one-time examination and Plaintiff's subjective complaints. Pl.'s Mem. Supp. Mot. Summ. J. 8-9, ECF No. 18-1. "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, No. 97-2551, 1998 WL 702296, at *2 (4th Cir. Oct. 6, 1998) (per curiam) (citation omitted). In this regard, "a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)).

Here, the ALJ appropriately found that Dr. Neckritz's opinion that Plaintiff's "ongoing pain and chronic pain problems make it difficult to work in a competitive environment" (R. at 316) was not a medical opinion, but an opinion on an issue reserved to the Commissioner and thus not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Thompson v. Astrue*, 442 F. App'x 804, 808 (4th Cir. 2011) (per curiam) ("Rather than providing a reasoned explanation, [the treating physician] simply opined in his conclusory fashion that [the claimant] was 'permanently and totally disabled' and 'will never be able to perform substantial gainful work activity.' Thus, [the treating physician's] letter more closely resembled an opinion on a matter reserved to the Commissioner than a medical opinion."). Further, the ALJ reasonably

18

found that Dr. Neckritz's opinion regarding Plaintiff's difficulty in working in a competitive environment "seemed to reiterate mainly [Plaintiff's] subjective complaints" and "failed to explain or quantify how the pain would limit his ability to work" (R. at 16).  *See Craig*, 76 F.3d at 590 (noting that conclusory medical opinion based on claimant's subjective reports and unsupported by opining physician's own notes was unpersuasive).   Moreover, contrary to Plaintiff's assertion, the ALJ did not err in assigning greater weight to the opinions of the state agency medical consultants than to Dr. Neckritz's opinion, as "the testimony of a non-examining physician can be relied upon when it is consistent with the record.  Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand."  *Smith*, 795 F.2d at 346 (citation omitted); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").  Finally, the ALJ reasonably discounted the opinion of Dr. Neckritz as a one-time consultative examiner.  *See Russell v. Barnhart*, 58 F. App'x 25, 29 (4th Cir. 2003) (per curiam) ("The ALJ . . . was justified in rejecting the opinion of Dr. Riaz that [the claimant] was totally disabled.  Dr. Riaz conducted a one-time consultative examination and, as the ALJ observed, his findings of total disability are inconsistent with the remaining evidence of record, particularly that evidence from [a treating psychiatrist and two treating psychologists].").

As noted previously, the Court's function is neither to review Plaintiff's claims *de novo* nor to reweigh the evidence of record.   The Court instead must determine whether, upon reviewing the whole record, the Commissioner's decision is supported by substantial evidence

and a proper application of the law.  Under that standard and in light of the evidence cited by the

ALJ, the Court finds no reversible error in the ALJ's RFC assessment.

**B.     ALJ's Duty to Develop Record**

Plaintiff also maintains that, by failing to order a consultative examination, the ALJ did

not fulfill his duty to develop the record.  Pl.'s Mem. Supp. Mot. Summ. J. 10-12, ECF No. 18-1.

According to Plaintiff, because of an evidentiary gap after July 2010, a consultative examination

was necessary to determine the severity of his neck and shoulder condition.  *Id.* at 12.

Although an ALJ has a duty to develop adequately the record on all relevant facts and

issues before making a final decision, *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), the

standard for ordering consultative examinations is when "the evidence as a whole is insufficient

to allow [the Commissioner] to make a determination or decision on [the] claim" or when there

is an inconsistency in the evidence.  20 C.F.R. § 404.1519a(b).  In other words, the need for a

consultative examination arises if, for example, "[t]he additional evidence needed is not

contained in the records of [the claimant's] medical sources"; "[t]he evidence that may have been

available from [the claimant's] treating or other medical sources cannot be obtained for reasons

beyond [the claimant's] control, such as death or noncooperation of a medical source"; "[h]ighly

technical or specialized medical evidence that [the Commissioner needs] is not available from

[the claimant's] treating or other medical sources"; or "[t]here is an indication of a change in [the

claimant's] condition that is likely to affect [the claimant's] ability to work, but the current

severity of [the claimant's] impairment is not established."  *Id.* § 404.1519a(b)(1)-(4).[8]

---

[8] At the time of the Commissioner's final decision on November 22, 2011, the applicable
regulation provided:

> A consultative examination may be purchased when the evidence as a whole, both
> medical and nonmedical, is not sufficient to support a decision on your claim.

A consultative examination was not warranted in this case because, as the Commissioner points out, Plaintiff "makes no argument that his impairments [had] worsened, or that during the evidentiary gap, new impairments [had] arisen" between July 2010 and his DLI of December 31, 2010. *Sheppard v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-13-1239, 2014 WL 2154169, at *3 (D. Md. May 20, 2014) (citing *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011)); *see Hawkins v. Chater*, 113 F.3d 1162, 1167-68 (10th Cir. 1997) ("[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." (citation omitted)). Accordingly, Plaintiff's contention in this regard is without merit.

---

Other situations, including but not limited to the situations listed below, will normally require a consultative examination:

(1) The additional evidence needed is not contained in the records of your medical sources;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

(4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b) (2011); *see Bryant ex rel. Bryant v. Barnhart*, 63 F. App'x 90, 92 n.1 (4th Cir. 2003) ("[U]nder the applicable regulations, a claimant's case should be reviewed under the rules in effect at the time of the final administrative decision.").

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**. The Commissioner's decision is **AFFIRMED**. A separate order shall issue.

Date: August 12, 2014                    _____/s/_____
                                         Thomas M. DiGirolamo
                                         United States Magistrate Judge